IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

CHAD HARRISON                                                                                          PLAINTIFF

vs.                                            Civil No. 3:14-cv-03055

CAROLYN COLVIN                                                                                     DEFENDANT
Commissioner, Social Security Administration

## MEMORANDUM OPINION

Chad Harrison ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act.  The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings.  ECF  No. 7.[1]  Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

**1. Background:**

Plaintiff's application for DIB and SSI were filed on September 27, 2011.  (Tr. 10, 122-136). Plaintiff alleged he was disabled due to carpal tunnel in both wrists, ulnar nerve problems, back injury, arthritis, neck pain, migraines, left shoulder rotator cuff problems, left knee problems, possible neuropathy in legs and feet, learning problems, comprehension problems, muscle pain, and

---

[1] The docket numbers for this case are referenced by the designation "ECF. No.___"  The transcript pages for this case are referenced by the designation "Tr."

numbness. (Tr. 182). Plaintiff alleged an onset date of January 5, 2010. (Tr. 10, 122, 131). These applications were denied initially and again upon reconsideration. (Tr. 10, 67-69, 73-78). Thereafter, Plaintiff requested an administrative hearing on his applications and this hearing request was granted. (Tr. 79).

Plaintiff's administrative hearing was held on November 26, 2012. (Tr. 30-66). Plaintiff was present and was represented by counsel, Frederick Spencer, at this hearing. *Id.* Plaintiff and Vocational Expert ("VE") Janice Hastert testified at this hearing. *Id.* At the time of this hearing, Plaintiff was thirty-six (36) years old, which is defined as a "younger person" under 20 C.F.R. § 404.1563(c), and had a high school education. (Tr. 34-35).

On November 16, 2012, the ALJ entered an unfavorable decision denying Plaintiff's application for DIB and SSI. (Tr. 10-25). In this decision, the ALJ determined Plaintiff met the insured status requirements of the Act through June 30, 2015. (Tr. 12, Finding 1). The ALJ determined Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since September 22, 2011. (Tr. 12, Finding 2). The ALJ also determined that Since September 23, 2011 there was a continuous 12-month period in Plaintiff did not engage in SGA. (Tr. 13, Finding 3).

The ALJ determined Plaintiff had the severe impairments of bilateral carpal tunnel syndrome, history of left rotator cuff tear, and obesity. (Tr. 13, Finding 4). The ALJ then determined Plaintiff's impairments did not meet or medically equal the requirements of any of the Listing of Impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings"). (Tr. 17, Finding 5).

In this decision, the ALJ evaluated Plaintiff's subjective complaints and determined his RFC. (Tr. 17-23). First, the ALJ indicated he evaluated Plaintiff's subjective complaints and found his claimed limitations were not entirely credible. *Id.* Second, the ALJ determined Plaintiff retained

the RFC to perform sedentary work in that Plaintiff could occasionally lift up to 10 pounds, stand or walk for approximately two hours in an 8-hour workday, and sit for approximately six hours in an 8-hour workday with normal breaks; could only occasionally climb ramps and stairs; could never climb ladders, ropes, or scaffolds; could occasionally stoop, kneel, and crouch; could never crawl; was limited to occasional overhead reaching with the left, non-dominant upper extremity; and was limited to frequent handling, fingering, and feeling bilaterally. (Tr. 17, Finding 6).

The ALJ evaluated Plaintiff's Past Relevant Work ("PRW"). (Tr. 23, Finding 7). The ALJ found Plaintiff was unable to perform his PRW as a lube technician and dishwasher. *Id.* The ALJ, however, also determined there was other work existing in significant numbers in the national economy Plaintiff could perform. (Tr. 24, Finding 11). The ALJ based his determination upon the testimony of the VE. *Id.* Specifically, the VE testified that given all Plaintiff's vocational factors, a hypothetical individual would be able to perform the requirements of a representative occupation such as ampoule sealer with 620 such jobs in Missouri and 82,000 such jobs in the nation, wire patcher with 1,000 such jobs in Missouri and 41,600 such jobs in the nation, and production checker with 380 such jobs in Missouri and 16,500 such jobs in the nation. *Id.* Based upon this finding, the ALJ determined Plaintiff had not been under a disability as defined by the Act from January 5, 2010, through the date of the decision. (Tr. 24, Finding 12).

Thereafter, Plaintiff requested the Appeals Council review the ALJ's decision. (Tr. 5). *See* 20 C.F.R. § 404.968. The Appeals Council declined to review this unfavorable decision. (Tr. 1-3). On May 23, 2014, Plaintiff filed the present appeal. ECF No. 1. The Parties consented to the jurisdiction of this Court on May 30, 2014. ECF No. 7. Both Parties have filed appeal briefs. ECF Nos. 12, 13. This case is now ready for decision.

**2. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g) (2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome or because the Court would have decided the case differently. *See Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months. *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation.  He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.  *See Cox,* 160 F.3d at 1206;  20 C.F.R. §§ 404.1520(a)-(f).  The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this analysis is reached.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

**3. Discussion:**

Plaintiff brings the present appeal claiming the ALJ erred in the RFC determination.  ECF No. 12, Pgs. 9-11.  In response, the Defendant argues the ALJ did not err in any of his findings.  ECF No. 13.

Prior to Step Four of the sequential analysis in a disability determination, the ALJ is required to determine a claimant's RFC.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).  This RFC determination must be based on medical evidence that addresses the claimant's ability to function in the workplace.  *See Stormo v. Barnhart,* 377 F.3d 801, 807 (8th Cir. 2004).  The ALJ should consider "'all the evidence in the record' in determining the RFC, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Stormo v. Barnhart,*

377 F.3d 801, 807 (8th Cir. 2004) (quoting *Krogmeier v. Barnhart,* 294 F.3d 1019 (8th Cir. 2002)). The Plaintiff has the burden of producing documents and evidence to support his or her claimed RFC. *See Cox*, 160 F.3d at1206; 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The ALJ, however, bears the primary responsibility for making the RFC determination and for ensuring there is "some medical evidence" regarding the claimant's "ability to function in the workplace" that supports the RFC determination. *Lauer v. Apfel,* 245 F.3d 700, 703-04 (8th Cir. 2001). Furthermore, this Court is required to affirm the ALJ's RFC determination if that determination is supported by substantial evidence on the record as a whole. *See McKinney v. Apfel,* 228 F.3d 860, 862 (8th Cir. 2000).

In this matter, the ALJ determined Plaintiff retained the RFC to perform sedentary work in that Plaintiff could occasionally lift up to 10 pounds, stand or walk for approximately two hours in an 8-hour workday, and sit for approximately six hours in an 8-hour workday with normal breaks; could only occasionally climb ramps and stairs; could never climb ladders, ropes, or scaffolds; could occasionally stoop, kneel, and crouch; could never crawl; was limited to occasional overhead reaching with the left, non-dominant upper extremity; and was limited to frequent handling, fingering, and feeling bilaterally. (Tr. 17, Finding 6). Plaintiff argues the ALJ erred in this RFC determination because it is not based on the opinion of a treating or examining physician. ECF No. 12, Pgs. 9-11. However, substantial evidence supports the ALJ's RFC determination.

To begin with, the medical record shows Plaintiff did not receive any medical treatment after he stopped performing at the SGA level on September 23, 2011. Therefore, Plaintiff's alleged physical impairments did not render him disabled even while he was actively seeking treatment for them.

On August 6, 2004, Plaintiff was diagnosed with possible left carpal tunnel syndrome. (Tr. 442-443). On October 18, 2004, Plaintiff underwent an open left carpal tunnel release with left ulnar decompression and medial epicondylectomy procedure. (Tr. 423-424). Plaintiff was seen on October 26, 2004 for a post-operative follow-up and indicated he was doing reasonably well and having improved numbness, but still had some numbness in the ulnar nerve distribution. (Tr. 446).

On March 1, 2005, Plaintiff had a nerve conduction study which revealed improved left carpal tunnel syndrome, but slowing across the left ulnar nerve at the elbow. (Tr. 388). As a result, Plaintiff underwent an anterior submuscular transposition procedure to the ulnar nerve in the left elbow on June 30, 2005. (Tr. 416-417). On November 29, 2005, a subsequent nerve conduction study of the left upper extremity revealed slightly worsened slowing of the left median nerve, consistent with only mild carpal tunnel syndrome, and much improved slowing of the left ulnar nerve. (Tr. 389).

On December 20, 2005, Plaintiff underwent a Functional Capacity Evaluation. (Tr. 458-469). The results showed Plaintiff gave an unreliable effort at the evaluation, with only 29 of 52 consistency measures within expected limits. (Tr. 458). The report indicated Plaintiff put forth a very inconsistent effort throughout the testing and demonstrated inappropriate pain reports and sensory deficits. *Id.* Findings supporting this included: Despite reporting major grip loss, Plaintiff demonstrated grip strength of over 110 pounds with his left upper extremity; pain reports of 7 to 9.5 out of 10 were inconsistent with demonstrated movement patterns and lack of outward indicators of pain; reports of complete numbness of the entire arm were inconsistent with normal neurological patterns; and did not exhibit decreased hand sensation with testing. *Id.* The evaluation also found Plaintiff's lifting and carrying abilities were self-limited and Plaintiff exhibited inconsistent active range of motion with the left shoulder throughout testing. *Id.*

As the ALJ noted, there was no evidence of medical treatment by Plaintiff until December 3, 2008 when Plaintiff was treated at the ER stating he injured his left shoulder during a work accident in late November 2008. (Tr. 410-413). X-rays revealed no abnormalities and Plaintiff was diagnosed with a left shoulder sprain. *Id.*

On February 5, 2009, Plaintiff underwent another nerve conduction study which revealed carpal tunnel syndrome and possible underlying polyneuropathy. (Tr. 390-391). The study did not reveal any significant ulnar nerve slowing at the elbow, and there was no evidence of any clear radicular changes. (Tr. 391). On February 18, 2009, Plaintiff underwent a diagnostic procedure where he was placed under anesthesia and subjected to thorough range of motion testing with his left elbow and shoulder. (Tr. 370). The left elbow was taken through a complete range of motion without any apparent lysis of adhesions. *Id.* The shoulder was also taken through a complete range of motion, which revealed no contracture release and a complete range of motion. *Id.*

On September 23, 2009, Plaintiff has an MRI of the left shoulder which showed an abnormal signal in the cuff reportedly representing a partial tear. (Tr. 369). On January 8, 2010, Plaintiff underwent an arthroscopic subacromial decompression procedure with debridement of the partial rotator cuff tear and repair of a superior labral tear. (Tr. 361).

Following the shoulder procedure, Plaintiff had physical therapy treatment for his left shoulder. (Tr. 315-332, 341-358). Plaintiff was noted to have some significant remaining limitations with range of motion in the left shoulder. (Tr. 332). However, the therapist felt there was some speculation during the course of his therapy that Plaintiff not working at his optimum level. *Id.*

On May 14, 2010, Plaintiff underwent a manipulative procedure for range of motion testing of his shoulder which was essentially normal. (Tr. 337). Plaintiff had no resistance to range of

motion testing except for a minimal amount of scar tissue released between 140 and 160 degrees of abduction and the remainder of his motion was essentially normal. *Id.*

On September 2, 2010, Plaintiff was seen at the Baxter Regional Medical Center for right wrist pain. (Tr. 300-313). X-rays of the right wrist revealed no acute fractures, but they did reveal a small amount of soft tissue swelling and a subtle amount of irregularity over the distal radius metaphysis that was notably likely to have been old. (Tr. 312). Plaintiff was diagnosed with a wrist sprain, prescribed a wrist splint, and temporarily advised to lift no more than 10 pounds with his right arm. (Tr. 313). On September 28, 2010, a nerve conduction study of the right upper extremity revealed moderate to severe right carpal tunnel syndrome, mild slowing of the right ulnar nerve at the elbow, and possible sensory neuropathy with prolonged sensory distal latencies of the median, ulnar, and radial nerves. (Tr. 392-393). However, as noted by the ALJ, there was no evidence of any additional treatment pursuit or even subjective complaints specific to any issues involving the right upper extremity within the remaining evidence of record. (Tr. 21).

On February 23, 2011, Plaintiff was seen for complaints of pain and swelling in his left knee. (Tr. 293). X-rays of the left knee were unremarkable and Plaintiff was diagnosed with a knee sprain. (Tr. 294). A subsequent MRI of the left knee, conducted a few days later, was also unremarkable. (Tr. 290). From February 25, 2011 through April 7, 2011, Plaintiff received treatment for left knee complaints on four occasions from Dr. Thomas Knox. (Tr. 470-474). Dr. Knox recommended physical therapy and released him to return to working at light duty. (Tr. 472-73).

Plaintiff was seen for physical therapy for his left knee from March 24 through April 6, 2011. (Tr. 271-288). Prior to his ultimate discharge from physical therapy services, Plaintiff was noted to have been released back to work at a full-time status with no restrictions in his activities. (Tr. 286). The physical therapist stated after reviewing the results of Plaintiff's negative clinical examination

findings, his negative MRI findings, and the significant biofeedback findings demonstrating he was actively avoiding achieving terminal extension of his knee, he came to the conclusion that Plaintiff appeared to be malingering. (Tr. 287).

As shown by the above medical evidence, substantial evidence supports the ALJ's RFC determination. Plaintiff has the burden of establishing his claimed RFC. *See Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart,* 390 F.3d 584, 590 (8th Cir. 2004)). Because Plaintiff has not met his burden in this case and because the ALJ's RFC determination is supported by sufficient medical evidence, this Court finds the ALJ's RFC determination should be affirmed.

### 4. Conclusion:

Based on the foregoing, the undersigned finds that the decision of the ALJ is supported by substantial evidence and should be affirmed. A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED** this **11th day of May 2015.**

>    /s/   Barry A. Bryant
>    HON. BARRY A. BRYANT
>    U. S. MAGISTRATE JUDGE